IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CR-54-1-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| DONTE HOWARD, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motions to suppress (DE 61, 64). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), United States Magistrate Judge Robert T. Numbers, II, entered a memorandum and recommendation ("M&R"), wherein it is recommended that defendant's motions be denied. (DE 88). Defendant filed objections to the M&R. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motions to suppress are denied.

## STATEMENT OF THE CASE

An indictment filed March 16, 2022, charges defendant with four offenses: (1) conspiracy to distribute and possess with the intent to distribute one thousand kilograms or more of marijuana; (2) possession with intent to distribute marijuana; (3) possession of a firearm by a convicted felon; and (4) possession of a firearm in furtherance of a drug trafficking crime.

Defendant filed the instant motions February 23, 2023. The motion lodged on the docket at entry no. 61 (the "apartment motion") seeks a hearing under Franks v. Delaware, 438 U.S. 154 (1978), on the basis that an affidavit submitted in application of a search warrant executed at an

apartment in Raleigh, North Carolina, intentionally or recklessly omitted information that would have obviated probable cause, and that the search constituted an unlawful administrative search. Defendant relies upon the apartment affidavit and warrant, photos taken by fire inspectors of alleged drugs and contraband, subpoena responses from the company that owns and operates the apartment building, and a police report summarizing the results of the search.

The motion lodged at entry no. 64 (the "house motion") seeks suppression of evidence seized pursuant to a warrant executed at a house located at 3306 Black Stallion Court in Zebulon, North Carolina, on grounds that the warrant was unconstitutionally overbroad, the officers exceeded its scope, and the government has failed to return non-responsive seized material. Defendant relies upon the house warrant and the affidavit in support thereof (the "house affidavit")

### STATEMENT OF FACTS

The court incorporates herein the background as more particularly set forth in the M&R:

> In September 2021, management from the Park Central apartment complex contacted the Raleigh Police Department ["RPD"] to report drug activity on the property. Park Central explained that it had been conducting "routine fire sprinkler system checks inside each apartment." As part of these inspections (of which tenants received notice), management sought to inspect Apartment 324. When they arrived, however, no one was home. Park Central management and employees of Fire & Life Safety America (a private company) then entered the apartment and encountered "an overwhelming odor of marijuana." They noticed "numerous small containers with marijuana in plain sight[,]" emptied cigars, and "a large plastic trash bag that appeared to be full of marijuana." In another room, they found "bulk amounts of paper U.S. currency along with a money counter machine." Management took pictures of these items and sent them to RPD.
>
> RPD officers sought and received a search warrant for Apartment 324 the same day. The warrant affidavit described what Park Central management told RPD, but it did not include the photos.
>
> When officers executed the search warrant that night, they found 24 pounds of marijuana, over $500,000 in cash, and a money counter. They also uncovered a firearm hidden in a sofa. And although [defendant] Howard's name was not on the lease for Apartment 324, various law enforcement agencies (including the Department of Homeland Security ["DHS"]) knew from an ongoing investigation that he lived there.

2

The following Valentine's Day, DHS applied for a federal warrant to search a home that belongs to Howard's mother on Black Stallion Court in Zebulon, North Carolina. Through surveillance, DHS determined that Howard had been living at the Black Stallion home and suspected that he stored bulk marijuana there before it was disbursed to distribution locations by other members of the alleged drug trafficking ring. Howard purportedly laundered the drug proceeds through a business called Never Change Auto, LLC.

In its application, DHS explained the steps it had taken in investigating Howard before requesting the warrant: Law enforcement officers watched other members of the alleged drug trafficking organization arrive at the Black Stallion home with bags of money and leave with large duffel bags or other containers. They intercepted text messages in which Howard advertised different strains of marijuana—often priced by the pound. They also spoke to two confidential informants. One claimed that he travelled to the Black Stallion home "to pick up bulk marijuana and transported it to various locations for it to be sold." The other claimed that he had purchased marijuana from Howard at Never Change Auto and that Howard sold marijuana from the home. DHS also noted the large amount of drugs and cash that RPD officers seized from Apartment 324 four months earlier. And finally, investigators assessed bank records associated with Never Change Auto stretching back to 2020.

A United States Magistrate Judge granted DHS's search warrant application, and the agency executed the warrant in late February. The warrant authorized officers to seize "evidence, fruits, or instrumentalities" of drug trafficking, conspiracy to traffic drugs, money laundering, wire fraud, and bank fraud. It then listed several categories of property subject to seizure. After executing the warrant, officers supplied an inventory of items they seized. Among these were two handguns, a money counter, ten pieces of jewelry, several electronic devices, three cars, and nearly $200,000 in cash.

(M&R (DE 88) 1–3) (internal citations omitted).[1]

## COURT'S DISCUSSION

A. Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a

---

[1] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B. Analysis

    1. Apartment Motion

The Fourth Amendment prohibits unreasonable searches and seizures, and commands that no warrants shall issue, "but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. An accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit. United States v. Allen, 631 F.3d 164, 171 (4th Cir. 2011). However, Franks v. Delaware, 438 U.S. 154 (1978) established a "narrow exception" to this rule, under which an accused is entitled to a hearing on the veracity of the statements in the affidavit. Id. at 171.

An accused must make three showings to receive a Franks hearing: (1) that law enforcement made a false statement in the affidavit; (2) that the false statement was made knowingly and intentionally, or with reckless disregard for the truth; and (3) that the false statement was necessary to the finding of probable cause. United States v. Moody, 931 F.3d 366, 370 (4th Cir. 2019).

4

The showing of falsity "cannot be conclusory and must rest on affidavits or other evidence." Id. The defendant therefore cannot rely on a "purely subjective disagreement" with the affiant but must show that statements are "objectively false." Id. The showing of intentional or reckless disregard for the truth requires "facts" demonstrating that the officer acted "with intent to mislead, or with reckless disregard for whether the statements would mislead, the magistrate" ("intentionality"). Id. at 371. Finally, the defendant must show that the false statements were "necessary" to the finding of probable cause ("materiality"). Id.

In turn, probable cause is a "fluid concept" under which a court assesses the "totality of the circumstances" presented in a warrant to determine whether, as a "practical, commonsense" matter, there is a fair probability that contraband or evidence will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 230 (1983); United States v. Colkley, 899 F.2d 297, 301-302 (4th Cir. 1990). This standard does not require an officer's belief to be "more likely true than false." United States v. Humphries, 372 F.3d 653, 660 (2004).

A search warrant affidavit carries a "strong presumption of validity[,]" Colkley, 899 F.2d at 300, so the defendant faces a "heavy . . . burden" in establishing entitlement to a Franks hearing. United States v. Jeffus, 22 F.3d 554, 558 (4th Cir. 1994). When a defendant relies upon omissions to make these showings, his burden "increases yet more." United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008). The mere fact of omission does not suffice to make any showing; instead, the defendant must demonstrate that the affiant's omission was "designed to mislead" or was made "in reckless disregard" of whether it would mislead. Id. at 455.

Only if a defendant makes all three showings required under Franks is he entitled to a hearing, at which he may establish the affiant's "material perjury or recklessness" by a

5

preponderance of the evidence. Colkley, 899 F.2d at 300. If the defendant does so, he is in turn entitled to suppression of the evidence seized pursuant to the warrant. See id.

Defendant objects to the M&R's analysis of the apartment motion on several different grounds. Defendant contends that the photographs taken by building management and employees of Fire & Life Safety America outright negate probable cause, so that failing to include them intentionally or recklessly misled the magistrate. Defendant further argues that for the same reasons, these items had nothing to do with marijuana, and that management therefore incorrectly identified the items in the photos as marijuana-related. Defendant contends this demonstrates management's unreliability, such that failing to disclose information about management's reliability was intentionally or recklessly misleading. (Def's Objs. M&R (DE 90) 2–4) ("apartment objection").[2] The court addresses these arguments in turn below.

The court turns first to defendant's contention that a container depicted in photos of the apartment does not bear a marijuana leaf symbol on its lid. In the M&R, the magistrate judge determined that the container "appear[ed] to depict marijuana leaf," to which defendant objects. (See M&R 8; Mot. Suppress Ex. 2 (DE 61-2) 1). Defendant contends the container does not "appear" to bear a marijuana leaf, and that "the [magistrate judge] views the photos differently than Mr. Howard." (Apartment Objection 3). Upon consideration de novo of the apartment photos in the record, the court adopts the determination in the M&R. The apartment photos neither negate probable cause, nor demonstrate that management misidentified marijuana-related items in any way pertinent to management's unreliability. (See Mot. Suppress Ex. 2 (DE 61-2) 1).

---

[2] The M&R addressed an additional argument that management conducted an unconstitutional administrative search on the government's behalf. Because defendant did not raise any objections to the magistrate judge's determination that management did not conduct an administrative search, the court reviews this conclusion for clear error. Finding no clear error, the court adopts the M&R on this issue.

The court reaches a similar conclusion with respect to defendant's objection that stating that a trash bag "appeared to be full of marijuana" demonstrates unreliability. (See Apartment Aff. (DE 61-1) 4). The photograph of the trash bag is not pristine, and the contents of the bag cannot be identified with absolute certainty. (See Mot. Suppress Ex. 2 at 2). However, upon de novo review, the court agrees with the determination in the M&R that the substance inside the bag appears "consistent" with marijuana, and therefore cannot conclude that the warrant affidavit's statements that the trash bag "appeared to be full of marijuana" and that "management advised that . . . marijuana could plainly be observed through the opening of the bag" negate probable cause or demonstrate management's unreliability. (M&R 8; Apartment Aff. 4).

Defendant also contends that certain items in the photographs are consistent with marijuana use, but do not necessarily point towards illegal activity. (See Apartment Objection 2–4). For instance, defendant argues that the tray in the photos could be used with tobacco or legal hemp, that the phrase "Get Liiit" on a container in the photo can refer to intoxication through alcohol or hemp, not just through marijuana, and that the substance management observed may have been legal hemp, not marijuana. Thus, in defendant's view, management is unreliable because they incorrectly identified a slew of items as marijuana-related.

United States v. Runner, 43 F.4th 417 (4th Cir. 2022) forecloses this argument. Runner involved a search supported by an officer's observation of a glass stem pipe in plain view, combined with an anonymous tip reporting drug usage. See id. at 419, 421–22. The defendant moved to suppress the subsequently seized evidence on grounds that the glass pipe was not inherently incriminating, because it could be used to smoke legal hemp or CBD oil, and therefore did not support probable cause.

7

The Runner court concluded that the stem pipe's potential legal use did not render the officers' belief that it was contraband unreasonable, when combined with the anonymous tip. See id. at 421–22. Thus, the court affirmed the finding of probable cause because such items can be used to consume illegal substances, and because "additional evidence or indicators" contributing to probable cause were present. See id. at 422–23. Both factors are present here, and together demonstrate that management did not irrationally misidentify these items as marijuana-related.

The tray, the phrase "Get Liiit[,]" and the observed substances are all at least consistent with the use or presence of marijuana.[3] See, e.g., United States v. Gates, No. 4:10-cr-237-ALM-KPJ(1), 2021 WL 3022037, at *3 (E.D. Tex. July 16, 2021) (rolling trays, alongside other items, supported probable cause). And critically, the affidavit described numerous items that pointed towards the possession or distribution of marijuana: "an overwhelming odor of marijuana," and "bulk amounts of paper U.S. currency along with a money counter machine." (Apartment Warrant Aff. 4) (emphasis added). These factors all provide or at least support probable cause. See Humphries, 372 F.3d at 658 (odor alone); United States v. Thomas, 913 F.2d 1111, 1115 (4th Cir. 1990) (large quantities of cash).

Numerous cases have upheld conclusions that drug-adjacent items or paraphernalia, some technically legal, were contraband when combined with other indicia of drug use or trafficking. See, e.g., Runner, 43 F.4th at 422–23; United States v. Dawson, 305 F. App'x 149, 159–60 (4th Cir. 2008) (assertion of legal use of glass vials combined with absence of such legal substances, attempt to avoid surveillance, and defendant with prior drug convictions); United States v. Jackson,

---

[3] Defendant concedes that the phrase "Get Liiit" refers to intoxication, but argues that the phrase here refers to intoxication through legal substances. (See Apartment Obj. 3). This argument and defendant's contentions about the tray fail for the same reasons: a phrase referencing intoxication is at least consistent with the use or presence of marijuana, and the presence of other marijuana-related items means that in context, the phrase supported, or at least did not negate, probable cause. Management's identification of this phrase as possibly related to marijuana use therefore does not cast doubt on management's reliability.

8

131 F.3d 1105, 1107–09 (4th Cir. 1997) (scales, packaging material, gel caps, white powder residue, and a chemical agent used to cut drugs); see also United States v. Evans, 445 F. App'x 29, 31 (9th Cir. 2011) (pipe combined with furtive movements during police interaction); United States v. Van Zee, 380 F.3d 342, 343 (8th Cir. 2004) (pipe combined with erratic driving).

Under this line of precedent, the court concludes that the presence of the tray and phrase, and the possibility that management may have observed hemp, do not defeat probable cause or demonstrate management's unreliability. Management found all these items in an apartment in which they also observed an "overwhelming" odor of marijuana and large quantities of cash, which both support probable cause for drug possession or trafficking. E.g., Humphries, 372 F.3d at 658; Thomas, 913 F.2d at 1115. These items therefore support probable cause, and demonstrate that management's inference of drug possession was rational.

Defendant next argues that a package labelled "Blue Nerdz[,]" which appears in one of the photographs, does not support probable cause, and that the government improperly relies on Google search results to support its position to the contrary in its opposition brief. Assuming without deciding that the government's Google search arguments should be discounted as defendant suggests, the court accepts that an unknown package labelled "Blue Nerdz" does not necessarily, or perhaps at all, support an inference of drug use or trafficking. However, the "Blue Nerdz" package is depicted in the same photo as the tray and the container that appears to bear a marijuana leaf, which the court has already concluded were relevant and supported probable cause. Its inclusion in the photograph provided to police was thus not gratuitous, and may be characterized as merely irrelevant, rather than intentionally or recklessly misleading, in the same way as the presence of unrelated cabinets in the photo's background. Even accepting defendant's argument concerning the "Blue Nerdz" package, this item's inclusion in the photographs does not negate

9

probable cause when viewed alongside the presence and odor of marijuana, and bulk quantities of cash, to which the affidavit attests. It therefore also does not demonstrate that management was unreliable to any appreciable degree.

In sum, management's only conduct that could even conceivably undermine probable cause or management's reliability was including the "Blue Nerdz" package in one of the photographs. But this inclusion does not even moderately damage management's reliability, such that police should have included information and their doubts about management's reliability in their warrant affidavit. Even omission of more significant conduct is generally insufficient to meet the Franks standard in the informant credibility context. See United States v. Haas, 986 F.3d 467, 472–73, 476–77 (4th Cir. 2021) (holding that omission of credibility information about witness who lied to police about unrelated matter was not intentionally or recklessly misleading); United States v. Glass, No. 5:21-CR-00060-KDB-DSC, 2023 WL 2844365, at *5–6 (W.D.N.C. Apr. 7, 2023) (omission of credibility information about witness who had submitted police report deemed "unfounded" in past did not meet standard).

By contrast, cases concluding that omission of informant credibility information met the Franks standard generally rest upon much more substantial, often egregious, omissions. See, e.g., United States v. Lull, 824 F.3d 109, 112, 116–20 (4th Cir. 2016) (concluding that omission of credibility information about informant who lied to law enforcement, committed a felony against law enforcement during investigation, and was dismissed as an informant after police obtained warrant justified Franks hearing); United States v. Glover, 755 F.3d 811, 817 (7th Cir. 2014) (same for informant with extensive criminal past, history of using false identities to deceive police, and expectation of payment for information); United States v. Hall, 113 F.3d 157, 158–59 (9th Cir. 1997) (same for informant who had extensive criminal history including conviction for making

10

false police report). The warrant affidavit's failure to include information on management's reliability therefore does not demonstrate intent to mislead, or reckless disregard for whether the affidavit might mislead. Furthermore, in light of the marijuana odor and bulk quantities of cash, the court would reach the same conclusion even if it accepted all of defendant's arguments and factual contentions that management irrationally and incorrectly misidentified the container, trash bag, phrase, and tray as marijuana-related.

In sum, the court concludes that the magistrate judge correctly analyzed the issues presented by the apartment motion. The affidavit submitted to obtain the apartment warrant did not contain any falsehoods, and omitting the photographs or a discussion of management's reliability did not render the affidavit intentionally or recklessly misleading. Defendant's request for a Franks hearing on the apartment affidavit is therefore denied.

    2.    House Motion

Defendant advances three arguments with respect to the house warrant: that (1) the warrant was untimely or stale, which defeated probable cause; (2) an insufficient nexus existed between the offenses and the house; and (3) the house warrant was unconstitutionally general. (See generally Objs. to M&R (DE 92) ("house objection")).[4] The court disagrees with each argument.

    a.    Timeliness

The court turns to the timeliness argument first. A valid search warrant requires allegations of "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." United States v. McCall, 740 F.2d 1331, 1335–36 (4th Cir. 1984). However, assessing information's timeliness requires more than "simply counting the number of days

---

[4] Before the magistrate judge, defendant argued that the house affidavit was impermissibly conclusory, and that the warrant authorized a general search of defendant's computers. Because defendant did not raise any objections to the magistrate judge's determination on these questions, the court reviews them for clear error. Finding no clear error, the court adopts the M&R on these issues.

11

between the occurrence of the facts supplied and the issuance of the affidavit." United States v. Farmer, 370 F.3d 435, 439 (4th Cir. 2004). Instead, the court must examine "all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized. Id. For instance, "protracted and continuous" crimes render "the recency of the information in [an] affidavit less crucial," and suggest that "probable cause [is] not diminished solely by the passage of time[,]" because defendants are "unlikely to . . . suddenly abandon[]" such activities. Id. (counterfeiting and money laundering); see United States v. Dowdell, 546 F. App'x 128, 134–35 (4th Cir. 2013) (drug trafficking); United States v. Blizzard, 313 F. App'x 620, 621 (4th Cir. 2009) (drug trafficking); United States v. Hanton, 189 F. App'x 247, 251 (4th Cir. 2006) (drug trafficking and money laundering).

Farmer and its line of cases therefore foreclose defendant's timeliness argument here. The house affidavit does not provide dates for many of the investigative steps it describes, but it outlines an elaborate drug trafficking and money laundering scheme, and it provides enough temporal information to anchor the warrant to law enforcement's information, for the following reasons.

First, the warrant affidavit describes a drug trafficking and money laundering operation in detail. (See House Aff. (DE 64-1) ¶¶ 11–28). The affidavit therefore discusses "protracted and continuous" crimes in which an immediate, strict sequence between an investigation, an affidavit, and a search is not required. See, e.g., Farmer, 370 F.3d at 439.

Second, the house affidavit provides enough information to anchor the investigation to the house warrant's issuance and execution in February, 2022. The house affidavit reports that the investigation into defendant began in March, 2021. (House Aff. ¶ 10.) It further states that in September, 2021, law enforcement executed the apartment warrant, which connected defendant to

drug trafficking, and spoke to a confidential informant who stated that defendant sold drugs from the house. (See House Aff. ¶¶ 15, 17). As for money laundering, the affidavit reports conduct consistent with money laundering occurring between September, 2020, and September, 2021. (See House Aff. ¶¶ 20–29).

Only about six months separated the latest dated information in the house affidavit and the house warrant's execution. (See House Aff. (September, 2021); House Warrant (DE 64-2) 1 (requiring execution by February 28, 2022)). Farmer and other cases have routinely rejected staleness arguments that involved similar lengths of time <u>when connected to</u> "continuous" crimes. E.g., Farmer, (nine-month gap reasonable in counterfeiting and money laundering investigation); United States v. Brewer, 204 F. App'x 205, 207–08 (4th Cir. 2006) (five-month gap reasonable in drug trafficking investigation); Hanton, 189 F. App'x at 251 (three-year gap reasonable in money laundering investigation); cf. United States v. Doyle, 650 F.3d 460, 474–76 (4th Cir. 2011) (assuming that pertinent crimes qualified as continuous, but concluding that warrant lacking <u>any</u> timeframe information whatsoever was invalid). "To accept [defendant's] staleness argument, [the court] would have to suppose that a successful and profitable criminal enterprise simply faded away for no apparent reason. This would defy common sense." Farmer, 370 F.3d at 440. The gap between the submission of the house warrant and the investigative activities it describes was therefore not so long that it defeated probable cause.

      b.    Nexus

Defendant argues that the house affidavit failed to establish a connection between the house and the suspected crimes.

A "crucial element" of probable cause is whether the items to be seized might reasonably be found in the place to be searched. United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993).

In the context of a house search pursuant to a drug trafficking investigation, the Fourth Circuit has "consistently" "upheld warrants to search suspects' residences and even temporary abodes on the basis of (1) evidence of . . . drug trafficking combined with (2) the reasonable suspicion . . . that drug traffickers store drug-related evidence in their homes." United States v. Williams, 548 F.3d 311, 319 (4th Cir. 2008). The latter element may rest upon "explicit articula[tion] by the applying officer or the implicit[] [conclusion] arrived at by the magistrate judge[.]" Id.

Here, the house affidavit states that defendant lived at the house. (House Aff. ¶ 30). It further outlines an elaborate drug trafficking scheme, and explicitly articulates the officer's belief that defendant stored related evidence at the house. (See id. ¶¶ 5, 6, 17, 30). The court therefore rejects defendant's nexus argument. See Williams, 548 F.3d at 319.

        c.        Particularity

The Fourth Amendment commands that warrants must "particularly describe the place to be searched, and the persons or things to be seized." This particularity requirement prohibits the government from executing a "general warrant" which authorizes a "general, exploratory rummaging in a person's belongings." Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). This requirement is fulfilled when the warrant identifies items to be seized by their relation to the designated crimes, and when the description of the items leaves nothing to the discretion of the officer executing the warrant. United States v. Williams, 592 F.3d 511, 519 (4th Cir. 2010) ("Williams II").

To satisfy the particularity requirement, the warrant also must "at least minimally confine[] the executing officers' discretion by allowing them to seize only evidence of a particular crime." United States v. Dickerson, 166 F.3d 667, 693 (4th Cir. 1999), rev'd on other grounds, 530 U.S.

428 (2000). For example, a warrant fails the particularity requirement if it authorizes a search for "general criminal activity," illustrated as follows:

> a warrant authorizing a search for evidence relating to "a broad criminal statute or general criminal activity such as "wire fraud," "fraud," conspiracy," or "tax evasion," is overbroad because it provides no readily ascertainable guidelines for executing officers as to what items to seize . . . [i]n contrast, a warrant authorizing a search for evidence relating to a specific illegal activity such as narcotics, or theft of fur coats, is sufficiently particular.

Id. at 694 (internal quotation marks omitted).

In Dickerson, the court held that the crime at issue, bank robbery, generated "distinct evidence," so a warrant authorizing a search for "[e]vidence of the crime of bank robbery" satisfied the particularity requirement. Id. at 693. In contrast, and relying upon Dickerson, this court has previously ruled that a warrant authorizing seizure of "all information . . . that constitutes fruits, evidence, and instrumentalities" of a crime that does not generate distinctive evidence was impermissibly general. See United States v. Shah, No. 5:13-CR-328-FL, 2015 WL 72118, at *12–14 (E.D.N.C. Jan. 6, 2015). Defendant's particularity objection rests solely upon Shah. (See House Obj. 2–3).

The warrants here and in Shah each contained two sections, but are not otherwise comparable. The Shah warrant's first section listed extremely broad categories of potential evidence; the second purported to narrow the first by directing seizure of items only if they related to very broad federal crimes that did not generate "distinctive evidence." See id. at *13. The court in Shah therefore concluded that this step did not actually narrow the warrant's unacceptably general scope. See id.

The warrant here is broad, but not impermissibly so. The warrant lists five federal offenses in its first section. (See House Warrant 3). Some offenses generate "distinctive evidence," but others do not. (See id. (listing drug offenses, money laundering, wire fraud, and bank fraud));

15

Dickerson, 166 F.3d at 694 (specifying that drug offenses generate "distinctive evidence" but that wire fraud does not). However, the warrant lists four particular categories of items, such as business records and US currency, and permits their seizure "only to the extent they constitute" evidence of the specified crimes, or fall into other specified categories such as contraband or property designed for use in committing the listed offenses. (See House Warrant 3). These portions of the warrant pass constitutional muster, because they describe items to be seized in relation to specific offenses and, by specifying particular categories of items, do not leave the scope of the search to the executing officers' discretion. They do not effectively direct the government to search for any and all evidence of wire fraud, in contrast to Shah.

The court acknowledges that the final sentence of the warrant poses a problem, however. This final sentence purports to authorize the seizure of "[a]ny other items that are evidence, fruits, or instrumentalities of a violation of the [listed crimes]." (House Warrant 3). Read in conjunction with the first section, this sentence authorizes the seizure of any item that is evidence of wire fraud, which is impermissibly general. See Dickerson, 166 F.3d at 694; see also United States v. George, 975 F.2d 72, 76 (2d Cir. 1992) (holding that "[m]ere reference to 'evidence' of a violation of a broad criminal statute or general criminal activity" was overbroad); United States v. Maxwell, 920 F.2d 1028, 1033 (D.C. Cir. 1990) (holding that general reference to evidence of wire fraud was too broad); United States v. Roche, 615 F.2d 6, 8 (1st Cir. 1980) (same with mail fraud statute).

However, this final sentence is severable from the remainder of the warrant. In United States v. Cobb, 970 F.3d 319, 331 (4th Cir. 2020), the Fourth Circuit held that a general "tail" will not swallow and invalidate an entire warrant, because it should be severed from the warrant's otherwise particular, proper remainder. Id.; see also United States v. Walker, 403 F. App'x 803, 805–06 (4th Cir. 2010) (concluding that portion of warrant authorizing seizure unsupported by

16

probable cause could be severed from remainder of otherwise proper warrant); United States v. Jacob, 657 F.2d 49, 51–52 (4th Cir. 1981) (holding that warrant's general "tail" authorizing seizure of evidence of undefined, unknown crimes could be severed); United States v. Prince, Nos. 97-4329, 97-4334, 1999 WL 511003, at *6–7 (4th Cir. July 20, 1999) (to similar effect).

Without the inclusion of this final sentence, the remainder of the warrant is sufficiently particular, as discussed above. This warrant's severability is in further contrast to the Shah warrant. The Shah warrant did not include a mere general "tail" that impermissibly interacted in a specific way with an earlier section. Instead, it listed several extraordinarily broad categories of property, and purported to authorize seizure of anything in any category that constituted evidence of computer fraud. See Shah, 2015 WL 72118, at *2. The impermissibly general portions of the Shah warrant could not be severed because they were integral to the warrant, so severance would have left nothing. See id.

Under these circumstances, Cobb directs the court to sever the general last sentence from the rest of the warrant, and to decline to suppress evidence seized under its valid portions. See Cobb, 970 F.3d at 330–31. Defendant has not pointed to any specific pieces of evidence whose seizure rested upon this invalidly general part of the warrant. (See generally House Obj.; House Mot.). Defendant instead makes an all-or-nothing argument, seeking invalidation of the entire warrant and suppression of all evidence seized through it. (See House Obj.; House Mot. 14–15).[5] But because the warrant is sufficiently particular after severance of the last sentence, this argument does not succeed.

---

[5] In his briefs in support of the instant motion, defendant argues that three specific seized items were unconnected to the alleged offenses. The magistrate judge determined that the fact that these items were in fact seized did not demonstrate that the warrant was too general. (See M&R 18 n.5). The court has reviewed this conclusion for clear error, finds none, and therefore adopts it. The court concludes in addition, for purposes of the Cobb analysis, that each named item falls within a category of items listed in the valid remainder of the warrant. (See House Warrant 3).

In sum, defendant's challenges to the house warrant lack merit. The house affidavit sufficiently established a temporal connection and a spatial nexus between the crimes and the house, and the house warrant is not unconstitutionally general, as severed herein.

## CONCLUSION

Based on the foregoing, the court ADOPTS the recommendation of the M&R (DE 88) and DENIES defendant's motions to suppress (DE 61, 64), including defendant's request for a <u>Franks</u> hearing.

SO ORDERED, this the 22nd day of November, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge